IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JODIE F.,[1] ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 22-1260-JWL |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Social Security Disability Insurance (SSDI) benefits and Supplemental Security Income (SSI) benefits pursuant to sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that decision shall be REVERSED and judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING to the Commissioner for further proceedings consistent herewith.

**I.   Background**

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

Plaintiff protectively filed an application for SSDI benefits on January 29, 2020. (R. 15, 226-34).[2] After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Plaintiff claims the ALJ failed to evaluate the prior administrative medical finding of Dr. Cohen properly and thereby failed properly to articulate the regulatory factors relevant to two prior administrative medical findings he evaluated as equally persuasive, failed adequately to articulate the supportability of Dr. Cohen's prior administrative medical finding, and failed to resolve inconsistencies and ambiguities between Dr. Cohen's prior administrative medical finding and the residual functional capacity (RFC) he assessed for Plaintiff.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  "Substantial evidence" refers to

---

[2] The ALJ's decision states Plaintiff "also protectively filed a Title XVI application for supplemental security income on October 13, 2009."  (R. 15).  Moreover, the record reveals both the agency and the ALJ decided a Title II application for SSDI and a Title XVI application for SSI.  However, the only Title XVI application in the record is that for an individual who is not a party in this suit and was not a party in the case before the agency.  (R. 221-25).  This issue does not affect the court's decision in this case, but on remand the Commissioner should clarify the issue and the record in this case.

2

the weight, not the amount, of the evidence.  It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it."  I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in Bowling)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a

determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's RFC. 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999). The court addresses the errors alleged in Plaintiff's Social Security Brief by addressing a single decisive issue. Plaintiff may make additional arguments on remand.

**II. Discussion**

With regard to Plaintiff's concentration and persistence limitations, at the initial review Dr. Cohen opined "claimant retains the ability to attend long enough to carry out 3 to 4 step tasks over a normal work schedule but depending on levels of pain and fatigue may have difficulty consistently doing work requiring sustained attention over long periods of time." (R. 76, 91). At the reconsideration review Dr. Blum, another agency psychological consultant, opined Plaintiff "should be capable of carrying out with adequate CPP [(concentration, persistence, and pace)] 3-4 step/intermediate tasks over a 40 hour workweek." Id. at 108, 120. The ALJ found each consultant's opinion persuasive and cited the same reasons for both. Id. at 24. There were no other opinions relating to mental limitations in the record and the ALJ assessed Plaintiff with the mental ability to "understand, remember, and execute intermediate instructions consistent with semiskilled work, and can maintain concentration, persistence, and pace in so doing." Id. 21 (finding no. 5, bold omitted).

Both parties agree the ALJ's assessed limitations are equivalent to limitations opined by Dr. Blum, but Plaintiff argues Dr. Cohen's limitation is materially different than the limitations assessed and different than those of Dr. Blum, requiring the ALJ to articulate three regulatory factors required when he finds two opinions equally persuasive, to further explain the supportability of Dr. Cohen's opinion, and to resolve inconsistencies and ambiguities between Dr. Cohen's opinion and the RFC assessed. Because the court finds the limitation opined by Dr. Cohen is materially different than the RFC assessed, remand is necessary for the Commissioner to resolve the inconsistency

and ambiguity between Dr. Cohen's opined limitation which the ALJ found persuasive and the RFC he assessed in accordance with Social Security Ruling (SSR) 96-8p.

### A.     The Legal Standards Applicable

The regulations include a section entitled "How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017." 20 C.F.R. § 404.1520c (2017). That regulation provides that the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s),[3] including those from your medical sources." 20 C.F.R. § 404.1520c(a) (2017). The regulation provides that the SSA will consider each medical source's opinions using five factors; supportability, consistency, relationship of source to claimant, specialization, and other factors tending to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(a)(c)(1-5) (2017). It provides that the most important factors in evaluating persuasiveness are supportability and consistency. Id.

The regulation explains that the decision will articulate how persuasive the SSA finds all medical opinions and prior administrative medical findings. 20 C.F.R. § 404.1520c(b) (2017). The articulation requirement applies for each source, but not for each opinion of that source separately. 20 C.F.R. § 404.1520c(b)(1) (2017). It requires

---

[3] "Prior administrative medical findings" is a term of art referring to the findings of state or federal agency physicians or psychologists about a medical issue at an earlier level of review. 20 C.F.R. § 404.1513(a)(5). Although the term is broader in scope than a "medical opinion," id. at § 404.1513(a)(2), the terms are often used interchangeably and the court will follow that practice in this case except when necessary to draw a distinction.

that the SSA "will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision.  We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record."  20 C.F.R. § 404.1520c(b)(2) (2017).  The regulation explains that when the decision-maker finds two or more medical opinions or prior administrative medical findings are equal in supportability and consistency "but are not exactly the same," the decision will articulate the other most persuasive factors from paragraphs (c)(3) through (c)(5).  20 C.F.R. § 404.1520c(b)(3) (2017).  Finally, the regulation explains that the SSA is not required to articulate how it considered evidence from non-medical sources.  20 C.F.R. § 404.1520c(d) (2017).

The Commissioner issued SSR 96-8p "[t]o state the Social Security Administration's policies and policy interpretations regarding the assessment of residual functional capacity (RFC) in initial claims for disability benefits."  1996 WL 374184, *1 (SSA July 2, 1996).  The ruling includes narrative discussion requirements for the RFC assessment.  Id. at *6-7.  The discussion is to cite specific medical facts and nonmedical evidence to describe how the evidence supports each conclusion, discuss how the plaintiff is able to perform sustained work activities, and describe the maximum amount of each work activity the plaintiff can perform.  Id., at *7.  The discussion must include an explanation how any ambiguities and material inconsistencies in the evidence were considered and resolved.  Id.  The narrative discussion must include consideration of the

7

credibility of the plaintiff's allegations of symptoms and consideration of medical opinions regarding the plaintiff's capabilities.  Id.  If the ALJ's RFC assessment conflicts with a medical source opinion, the ALJ must explain why he did not adopt the opinion. Id.

    **B.**    **The Commissioner's Arguments**

The Commissioner argues, "The entirety of Plaintiff's argument is premised on a misunderstanding of Dr. Cohen's findings, and a mistaken belief that Dr. Cohen found Plaintiff could not concentrate for normal two-hour segments, which is not born out by Dr. Cohen's assessment when read as a whole."  (Comm'r Br. 5).  She asserts Dr. Cohen's finding Plaintiff "retains the ability to attend long enough to carry out 3 to 4 step tasks over a normal work schedule but depending on levels of pain and fatigue may have difficulty consistently doing work requiring sustained attention over long periods of time" (R. 76, 91) is a plain statement "that Plaintiff could perform a 'normal' work schedule if limited to semiskilled work. The additional statement is merely a warning that Plaintiff may have problems if an occupation required longer than normal periods." (Comm'r Br. 6).  She argues this is so because, "Plaintiff conflates the definition of 'extended periods' in the regulations, which describes what is expected for a normal work schedule, the ability to concentrate for two-hour intervals, with Dr. Cohen's statement as to 'long periods.'"  Id. (citing Pl. Br. at 15-16).

    She explains,

> A statement that a claimant can concentrate for extended periods, or two hours, denotes that they can handle normal work schedules and is not a limitation at all.  As the agency has described, normal work involves

8

> working in two-hour intervals. SSR 96-9p describes a normal work routine as "a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals."

(Comm'r Br. 6) (quoting SSR 96-9p, 1996 WL 374185, *6 (SSA July 2, 1996). She argues, "Dr. Cohen plainly found that if limited to semiskilled work, Plaintiff retained the ability to maintain a 'normal work schedule'" which "includes the ability to work in extended, two-hour intervals." Id. at 7. She argues that Dr. Cohen's further opinion—"but depending on levels of pain and fatigue [Plaintiff] may have difficulty consistently doing work requiring sustained attention over long periods of time" (R. 76, 91)—is merely a warning "that Plaintiff may have difficulties with occupations that require longer-than-normal concentration, a warning that in no way conflicts with the RFC or Dr. Blum's findings." (Comm'r Br. 7).

She argues it is immaterial that Plaintiff understands Dr. Cohen's opinion differently than the ALJ because in "substantial evidence review, the only issue is whether the ALJ's understanding of the findings was supported by the evidence." Id. 7-8. (citing this court's decision in Jeri A. C. v. Kijakazi, Civ. A. 21-1233-JWL, 2022 WL 3868150, at *5 (D. Kan. Aug. 30, 2022)). The Commissioner submits her conclusion, "There is no material difference [between] Dr. Cohen's findings and either the RFC or Dr. Blum's findings. The addition of a warning as to longer-than-normal concentration does not suggest any limitations with normal work schedules." Id. 8.

### C.     Analysis

As noted by both Plaintiff and the Commissioner, Dr. Cohen opined, "claimant retains the ability to attend long enough to carry out 3 to 4 step tasks over a normal work

9

schedule but depending on levels of pain and fatigue may have difficulty consistently doing work requiring sustained attention over long periods of time." (R. 76, 91). Had Dr. Cohen stopped at the end of her first clause, the court would agree there was no material difference between Dr. Cohen's limitation and Dr. Blum's limitation or the RFC assessed by the ALJ. However, without so much as a comma Dr. Cohen continued—"but depending on levels of pain and fatigue [Plaintiff] may have difficulty consistently doing work requiring sustained attention over long periods of time." Id. The Commissioner argues that the first clause refers to the "normal" extended periods of approximately two hours' duration and the second clause is a cautionary warning against longer periods of time. While it is at least conceivable that is what Dr. Cohen intended and, in the circumstances of this case, that is presumably what both Dr. Blum and the ALJ understood, the court may not accept that understanding for to do so would render the second clause without purpose.

Dr. Cohen expressed her opinion at the initial review of Plaintiff's application when answering questions regarding Plaintiff's sustained concentration and persistence limitations to assess her mental RFC. Id. Dr. Cohen noted Plaintiff was "Moderately limited" in "[t]he ability to maintain attention and concentration for extended periods." Id. Dr. Cohen rated all other abilities within the section relating to sustained concentration and persistence as "Not significantly limited." Id. Dr. Cohen then explained Plaintiff's sustained concentration and persistence limitations in narrative form with the two clauses as quoted above. Thus, the clauses explain Plaintiff's moderate limitation in maintaining attention and concentration for extended periods—that she has

10

the attention to carry out 3 to 4 step tasks over a normal work schedule but pain and fatigue levels may make it difficult to sustain that attention over long periods of time. The Commissioner's argument that "long periods of time" means some period longer than the "extended period" of approximately two-hour segments ignores that "long," and even "very long" are synonyms of "extended."  Thesaurus.com, available online at https://www.thesaurus.com/browse/extended (last visited Sept. 19, 2023).  Moreover, Dr. Cohen did not say "longer" periods of time which would at least indicate her opinion was extended beyond the period about which she was asked to opine—extended periods.

Finally, the Commissioner's argument seems to imply that Dr. Cohen was of the opinion—or at least agreed with the opinion—that Plaintiff was not disabled.  However, there is simply no record evidence suggesting she opined or agreed that Plaintiff was not disabled.  Dr. Cohen signed her opinion. (R. 77).  The determination of disability appears in the record at pp. 79-80.  It was signed by Dr. West, a state agency medical consultant, who had also signed his opinion earlier in the determination, id. at 75, and by Ms. Roberts, a "Disability Adjudicator/Examiner," but not by Dr. Cohen.  Id. at 80. Moreover, although it would seem necessary and appropriate, the Commissioner cites no authority, and the court is aware of none, requiring that any state agency consultant who opines in a Disability Determination Explanation must have agreed with the ultimate finding of the disability determination.

The Commissioner is correct that the issue here is whether the ALJ's decision is supported by the record evidence.  But, as noted herein the ALJ's finding of no material difference between Dr. Cohen's opinion and the RFC assessed and Dr. Blum's opinion,

11

although implied, is not supported by record evidence.  The discussion above reveals an inconsistency, or at least an ambiguity, requiring remand for an explanation.

**IT IS THEREFORE ORDERED** that the Commissioner's decision shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING this case to the Commissioner for further proceedings consistent herewith.

Dated September 20, 2023, at Kansas City, Kansas.

 s/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**